UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| DERRICK DIONE BAKER, ) | | |
|     Plaintiff, ) | | |
| ) | | |
| vs. ) | | 1:12-cv-397-TAB-SEB |
| ) | | |
| CITY OF ANDERSON POLICE, ) | | |
| CHAD BOYKINS, CHRIS FRAZIER, ) | | |
| STEVE DENNY, and JOHN BRANSON, ) | | |
|     Defendants. ) | | |

**ORDER ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

**I.     Introduction**

Plaintiff Derrick Baker alleges Defendants violated his constitutional rights during his April 15, 2010, arrest by using excessive force after he surrendered. Defendants move for summary judgment arguing that pursuant to *Heck v. Humphrey*, 512 U.S. 477 (1994), Plaintiff's claim is inconsistent with his conviction under Indiana Code § 35-44-3-3 for resisting law enforcement. Defendants also contend that they are entitled to qualified immunity.[1] The Court disagrees.

Plaintiff's conviction is not necessarily inconsistent with his excessive force claim. Given Plaintiff's conviction for resisting law enforcement, Plaintiff wisely does not deny that he attempted to flee from the police. He admits that he was tipped off about police officers preparing to arrest him at his residence, that he immediately left the residence, and that he went

---

[1] In addition to Defendants' qualified immunity argument, Defendants originally moved for summary judgment arguing that their actions were objectively reasonable under the Fourth Amendment, but Defendants later withdrew this argument. [Docket No. 59 at 1.]

to the back of the residence where officers cornered him. Plaintiff claims he then surrendered—ending his attempt to flee—but nevertheless was attacked by a police canine, "struck in the head, slammed to the ground, and while on the ground, he [was] kicked and/or punched by the Defendants, while the police dog continued to bite." [Docket No. 31 at 2.] If a jury accepts Plaintiff's allegations, then his claim is not necessarily inconsistent with his conviction and Defendants would not be entitled to qualified immunity. For these reasons, as more fully set forth below, Defendants' motion for summary judgment [Docket No. 35] is denied.

## II.     Background

The parties do not dispute that Plaintiff was arrested on April 15, 2010, on a warrant for failure to appear and a probation violation. Nor do the parties dispute that Plaintiff was convicted for resisting law enforcement under Indiana Code § 35-44-3-3.[2] [Docket No. 37-8 at 2–3.] However, the parties' versions of what led to Plaintiff's arrest differ drastically. According to Defendants, Officer Chad Boynton received a tip that Plaintiff was at a residence on Morton Street in Anderson, Indiana.[3] [Docket No. 36 at 2.] Officer Boynton also had information that Plaintiff possibly stole, and was in possession of, a firearm. [*Id.*] Boynton notified Officer John Branson and other officers that he planned to make an arrest. [*Id.*] Branson reviewed Plaintiff's criminal history and learned that he had a "very lengthy and violent

---

[2] Indiana Code § 35-44-3-3 is the statute under which Plaintiff was charged. [Docket No. 37-8.] It has since been repealed and recodified at Indiana Code § 35-44.1-3-1.

[3] The parties refer to the officer as Chad Boynton, but the docket refers to the officer as Chad Boykins. Also, there is some discrepancy about whether Plaintiff, his girlfriend, or both lived at the residence on Morton Street.

2

past, including previously shooting at a police officer." [*Id.*]

After reviewing Plaintiff's criminal history, Officers Boynton, Branson, Steve Denny, Chris Frazier, and Williams proceeded to Morton Street.[4] [*Id.*] After police arrived, Plaintiff left the residence at Morton Street and Branson yelled "stop, police canine." [*Id.*] Baker then fled, failing to obey Branson's commands. [*Id.*] Frazier was also giving commands to stop. [*Id.*] Frazier and Branson located Plaintiff hiding behind an air conditioning unit and were unable to see his hands. [*Id.*] Due to Plaintiff's violent past and the possibility that he may have the allegedly stolen firearm, Branson deployed his police canine dog. [*Id.*] Only after the canine was released did Plaintiff throw his hands in the air. [*Id.*] The canine was immediately called off and Plaintiff was handcuffed and taken to the hospital to receive treatment for canine bites. [*Id.* at 3.] On October 4, 2011, Plaintiff was convicted for resisting law enforcement under Indiana Code § 35-44-3-3.[5] [Docket No. 37-8 at 2–3.]

According to Plaintiff's version of events, he received a phone call from a friend informing him that police were outside his residence. [Docket No. 31 at 2.] After receiving the call, Plaintiff left the apartment and did not see any police officers until he walked around the back of the apartment where he saw Boynton, Denny, Frazier, and Branson. [*Id.*] "Plaintiff put his hands up in order to signal to the officers his surrender and submission, and he did not attempt to resist or flee." [*Id.*] Plaintiff's affidavit clarifies that he "was not fighting or fleeing at this time, and was not in handcuffs." [Docket No. 56-1 at 2.] According to Plaintiff, Sergeant

---

[4]Officer Williams is not a Defendant in this case and the parties do not identify him other than by his last name.

[5]Indiana Code § 35-44-3-3 is the statute under which Plaintiff was charged. [Docket No. 37-8.] It has since been repealed and recodified at Indiana Code § 35-44.1-3-1.

Branson gave an order to his canine, which began attacking Plaintiff. [Docket No. 31 at 2.] "Plaintiff was then struck in the head, slammed to the ground, and while on the ground, he [was] kicked and/or punched by the Defendants, while the police dog continued to bite." [*Id.*] "Plaintiff alleges that the Defendants, and each of them, watched as their fellow officers battered and subjected the Plaintiff to excessive and unreasonable force, but failed to intervene to protect the Plaintiff, in spite of having a meaningful opportunity to do so." [*Id.* at 3.]

### III. Discussion

#### A. Heck Challenge

Defendants contend that Plaintiff's excessive force claim, asserted pursuant to 42 U.S.C. §1983, is barred by *Heck v. Humphrey*, 512 U.S. 477 (1994). In *Heck*, the Court held that §1983 actions must be dismissed if a "judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence . . . unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated." 512 U.S. at 487; *see also Okoro v. Callaghan*, 324 F.3d 488, 490 (7th Cir. 2003) ( "[I]f he makes allegations that are inconsistent with the conviction's having been valid, *Heck* kicks in and bars his civil suit."). "But if the district court determines that the plaintiff's action, even if successful, will not demonstrate the invalidity of any outstanding criminal judgment against the plaintiff, the action should be allowed to proceed, in the absence of some other bar to the suit." *Heck*, 512 U.S. at 487.

The Seventh Circuit has held that claims of excessive force are not necessarily inconsistent with a conviction for resisting arrest. For example, in *Navejar v. Iyiola*, __ F.3d __, 2013 WL 2321349, at *5 (7th Cir. May 29, 2013), prisoner Navejar "brawled" with prison guard Akinola Iyiola. Navejar claimed that "after guards subdued and handcuffed him, they kicked,

stomped, and pepper-sprayed him twice, and then they denied him adequate medical care." *Id.* at *1. The prison board later found Navejar guilty of disobeying orders and assaulting Iyiola. *Id.* at *5. The court opined that "Navejar cannot deny that he disobeyed orders or assaulted Iyiola because those denials would 'necessarily imply' the invalidity of his discipline . . . ." *Id.* Nevertheless, the court held that "Navejar's assault on Iyiola is not necessarily inconsistent with his sworn contention that the guards answered his assault with excessive force after they subdued him." *Id.* To hold otherwise would permit law enforcement to "maul anyone who strikes them, without risk of civil liability as long as the private party is punished by criminal prosecution or prison discipline for the initial wrong." *Id.*

Citing *Matthews v. Mariner*, No. 1:05-CV-008-RLY-TAB, 2010 WL 3325632, at *2 (S.D. Ind. Aug. 23, 2010), Defendants contend that Plaintiff's amended complaint and notice of tort claim falsely assert that he never resisted law enforcement at any time, which is an allegation in direct conflict with Plaintiff's § 1983 claim. The Court disagrees. To determine whether Plaintiff's allegations are in direct conflict with his conviction, the Court first looks to the statute underlying the charge and conviction, Indiana Code § 35-44-3-3. Although this statute is labeled "Resisting law enforcement," the title is somewhat of a misnomer. A violation of this statute could mean that the offender forcibly resisted or simply fled from law enforcement officers:

> (a) A person who knowingly or intentionally:
> (1) forcibly resists, obstructs, or interferes with a law enforcement officer or a person assisting the officer while the officer is lawfully engaged in the execution of his duties as an officer;
> (2) forcibly resists, obstructs, or interferes with the authorized service or execution of a civil or criminal process or order of a court; or
> (3) flees from a law enforcement officer after the officer has, by visible or audible means, identified himself and ordered the person to stop;
> commits resisting law enforcement, a Class A misdemeanor, except as provided in subsection (b).

Nothing in the record explains under which subsection of § 35-44-3-3 that Plaintiff was convicted. This is not surprising given that Plaintiff was charged with violating Indiana Code § 35-44-3-3 in general. [Docket No. 37-8 at 2.] Nonetheless, Defendants' statement of the facts does not assert that Plaintiff forcibly resisted law enforcement. Rather, Defendants' version of the events only implicates subsection (a)(3) for fleeing, which is consistent with other parts of the record.

For example, Plaintiff claims that he was tipped off about the police and exited the residence at Monroe Street. [Docket No. 56-1 at 2.] Defendants contend "after Baker exited the residence Branson yelled, 'stop, police canine,'" but "Baker fled failing to obey commands" and later was found "hiding behind an air conditioning unit." [Docket No. 36 at 2.] The probable cause affidavit also states that the "suspect turned and ran from officers" and he was "charged with resisting law enforcement for fleeing from officers." [Docket No. 56-2.] Based on the foregoing, the only section that Plaintiff could reasonably be convicted under would be subsection (a)(3). Ind. Code § 35-44.1-3-1(a)(3) ("A person who knowingly or intentionally . . . flees from a law enforcement officer after the officer has, by visible or audible means, including operation of the law enforcement officer's siren or emergency lights, identified himself or herself and ordered the person to stop; commits resisting law enforcement . . . .").

Turning to Plaintiff's allegations, Plaintiff's amended complaint alleges that "he did not attempt to resist or flee." [Docket No. 31 at 4.] This statement, in isolation, is inconsistent with his conviction. However, when considered in context and drawing all reasonable inferences in Plaintiff's favor, one permissible conclusion is that Plaintiff did not attempt to flee once cornered by police officers. Moreover, in light of Plaintiff's conviction, the only reasonable reading of the

6

amended complaint is that Plaintiff did not attempt to flee after he was confronted by police.[6] This is consistent with Plaintiff's affidavit, which states that Plaintiff "was not fighting or fleeing at this time, and was now in handcuffs." [Docket No. 56-1 at 2.] Plaintiff's brief also asserts that he does not claim that "he never resisted arrest in any way." [Docket No. 61 at 6.] Therefore, unlike in *Matthews* where the plaintiff "steadfastly" maintained that he did not flee or resist despite a conviction stating otherwise, *Matthews v. Mariner*, No. 1:05-CV-008-RLY-TAB, 2009 WL 5217113, at *3 (S.D. Ind. Aug. 23, 2010), Plaintiff does not maintain that he never attempted to flee. Rather, Plaintiff does not disagree with the proposition that he attempted to flee, but asserts that once cornered by law enforcement he surrendered—ending his attempt to flee—at which point police officers deployed their canine and beat up Plaintiff. If a jury accepts Plaintiff's version of events, then they are not inconsistent with his conviction.

In any event, Seventh Circuit case law generally permits the Court to reject any allegations that are inconsistent with a conviction and proceed with those allegations that are not inconsistent. For example, in *Evans v. Poskon*, 603 F.3d 362, 364 (7th Cir. 2010), Evans made three contentions: "(1) that he did not resist being taken into custody; (2) that the police used excessive force to effect custody; and (3) that the police beat him severely even after reducing him to custody." *Id.* With respect to the first proposition, the officers claimed that Evans resisted arrest and had to be subdued, while Evans claimed that he "offered no resistance and was beaten mercilessly both before and after the officers gained custody of him." *Id.* at 363. Despite a conviction for resisting arrest, the Seventh Circuit held that Evans' suit survived a *Heck* challenge because it did "not understand Evans to assert that he is advancing propositions

---

[6]Plaintiff's notice of tort claim essentially mirrors his complaint. [Docket No. 1-1.]

(2) and (3) if and only if the district court accepts proposition (1)." *Id.* at 364; *see also Gilbert v. Cook*, 512 F.3d 899, 902 (7th Cir. 2008) (explaining that jury instructions can sufficiently account for a conviction and properly resolve any allegations that are inconsistent the conviction). Accordingly, *Heck* does not bar Plaintiff's claim of excessive force. Any inconsistent facts that Plaintiff may assert can be disregarded and otherwise adequately addressed through jury instructions.

  *B.*  *Qualified Immunity*

  Defendants also contend that they are entitled to qualified immunity. "Qualified immunity protects public servants from liability for reasonable mistakes made while performing their public duties." *Findlay v. Lendermon*, ___ F.3d ___, 2013 WL 2992392, at *3 (7th Cir. June 14, 2013). "Defeating qualified immunity requires (1) conduct violating the plaintiff's constitutional or statutory rights that is (2) clearly established at the time of the violation such that a 'reasonable official would understand that what he is doing violates that right.'" *Id.*

  The use of any significant force not reasonably necessary to effect an arrest when the force is used after the suspect's flight or resistance is constitutionally unreasonable. *Ramusack v. Swanson*, No. 2:04-CV-226PS, 2005 WL 3359114, at *8 (N.D. Ind. Dec. 9, 2005). Plaintiff claims that the use of excessive force—the canine attack and being struck repeatedly—occurred after he surrendered and was handcuffed. If a jury accepts Plaintiff's version of events, then Defendants' actions violate the Constitution and are not objectively reasonable. Defendants note that courts must be careful not to define constitutional rights too broadly and that "those situations where there is a valid resisting conviction based upon the same incident should not be decided on the backs of public servants who incorrectly guess which decisions ultimately

prevail." [Docket No. 59 at 7–9.] While this statement is generally correct, if Plaintiff's allegations are accepted as true by a jury, there is no guess work involved in knowing that the use of a canine and repeated physical force after a suspect surrenders and is in handcuffs is not objectively reasonably under our Constitution. Accordingly, Defendants' claim of qualified immunity is not appropriate for summary judgment.

## IV.   Conclusion

For the reasons above, Defendants' motion for summary judgment [Docket No. 35] is denied. Accordingly, Plaintiff's motion to strike [Docket No. 55] is denied as moot. This cause remains set for a final pretrial conference at 1:30 p.m. on August 9, 2013, in Room 234, United States Courthouse, 46 E. Ohio Street, Indianapolis, Indiana, and for trial on August 27, 2013.

DATED: 7/22/2013

_____
Tim A. Baker
United States Magistrate Judge
Southern District of Indiana

Copies to:

Christopher Carson Myers
CHRISTOPHER C. MYERS & ASSOCIATES
cmyers@myers-law.com

Anthony W. Overholt
FROST BROWN TODD LLC
aoverholt@fbtlaw.com

Ilene M. Smith
CHRISTOPHER MYERS & ASSOCIATES
ismith@myers-law.com

Richard Bruce Walker
walkerlaw8@gmail.com